

# In the
# Missouri Court of Appeals
# Western District

| | |
|---|---|
| VILLAGE OF AGENCY, MISSOURI, | ) |
| | ) |
| Appellant, | ) WD79220 |
| | ) |
| v. | ) OPINION FILED: October 25, 2016 |
| | ) |
| CITY OF ST. JOSEPH, MISSOURI, | ) |
| ET AL., | ) |
| | ) |
| Respondents. | ) |

**Appeal from the Circuit Court of Buchanan County, Missouri**
The Honorable Randall R. Jackson, Judge

Before Division One:  Thomas H. Newton, Presiding Judge, Cynthia L. Martin, Judge
and Edward R. Ardini, Jr., Judge

Village of Agency, Missouri ("Village") appeals the trial court's denial of a petition which sought a declaration authorizing an involuntary annexation.  Village alleges that the trial court erred in requiring it to prove by substantial evidence that the reasonableness and necessity of the proposed annexation was fairly debatable.  Village also alleges that the trial court erred in refusing to consider its desire to regulate nearby land so that it would not be put to a noxious use in determining whether the reasonableness and necessity of the annexation was fairly debatable.  We affirm.

## Factual and Procedural Background[1]

Village sought to annex approximately 347 acres of unincorporated land located in Buchanan County, Missouri adjacent to its existing city limits ("Annexed Territory").  City of St. Joseph, Missouri ("City") owns approximately 238 acres of the Annexed Territory.[2] City also owns and operates a landfill that is located west of the Annexed Territory.

City has previously attempted to expand the landfill into the Annexed Territory by applying for conditional use permits from Buchanan County.  Though Village has successfully opposed these applications, it decided in May 2013 to initiate involuntary annexation proceedings "to control how the [Annexed Territory] would be developed in order to maintain the character of [Village] and the quality of life enjoyed by Village residents."  [Appellant's Brief, p. 15]  The annexation proceedings were initiated pursuant to section 71.015,[3] the Sawyer Act.[4]

Village held a public hearing to present an annexation plan of intent.  The plan of intent was prepared by Earl Huskamp ("Huskamp"), Village's Clerk.  The plan of intent

---

[1]The factual and procedural background is drawn largely from uncontested or stipulated facts included in the trial court's written judgment.

[2]The remaining acreage sought to be annexed is owned by Sidney and Jean Johnson, Sidney B. and Tracy M. Johnson, and Barbara J. Johnson (collectively, the "Johnsons").  The Johnsons did not file an answer with the trial court or otherwise oppose the proposed annexation.

[3]All statutory references are to RSMo 2000 as supplemented unless otherwise indicated.

[4]Missouri cases have periodically referred to section 71.015 as the "Sawyer Act," "Sawyers Act," and "Sawyer's Act," with no explanation offered for the variations. *McConnell v. City of Kansas City*, 282 S.W.2d 518 (Mo. 1955) ("Sawyer Act"); *City of Hannibal v. Winchester*, 391 S.W.2d 279 (Mo. banc 1965) ("Sawyers Act"); *City of Peculiar v. Effertz Bros Inc.*, 254 S.W.3d 51 (Mo. App. W.D. 2008) ("Sawyer's Act").  We have been unable to locate legislative history explaining section 71.015's popular characterization, or any decisional law explaining variations in judicial references to section 71.015.  However, references to section 71.015 contemporaneous with its enactment refer to the section as the "Sawyer Act."  *See, e.g.*, *Annexation by Municipality of Adjacent Area in Missouri: Judicial Attitude Toward the Sawyer Act*, 1961 WASH. U. L. Q. 159, 159 (1961) ("In 1953, the Missouri legislature enacted Section 71.015 of the Revised Statutes, popularly known as the Sawyer Act.").  In addition, section 71.015 *et seq.* is referred to in the "Popular Name Table" of RSMo as "Sawyer Act."  RSMo 2000, Vol. 20, Popular Name Table, p. 520.  We thus refer to section 71.015 as the "Sawyer Act," believing that to be the correct characterization.

provided that the Annexed Territory would remain zoned agricultural. Village's Board of Trustee's authorized the annexation by duly enacted ordinance, and at a subsequent election on November 4, 2014, a majority of the electors in both Village and the Annexed Territory approved the annexation.

Village then filed a petition seeking a declaratory judgment authorizing the annexation. The trial court entered its judgment on November 18, 2015 ("Judgment") finding that Village failed to put forth substantial evidence to establish that the reasonableness and necessity of the proposed annexation was fairly debatable. The Judgment thus concluded that Village could not proceed with annexation of the Annexed Territory.

Village filed this timely appeal.

### Standard of Review

"The standard of review applicable to a decision to annex land is whether there is substantial evidence showing that the reasonableness and necessity of the annexation is at least fairly debatable." *City of Centralia v. Norden*, 879 S.W.2d 724, 727 (Mo. App. W.D. 1994). The extent of our inquiry is "whether substantial evidence has been presented by the [annexing municipality] to support the determination of its governing body such that reasonable men could differ as to the necessity of the extension." *Id.* "If there is substantial evidence both ways on the issue of annexation, then the legislative conclusion is determinative." *Id.*

3

## Analysis

Village asserts two points on appeal. Village's first point argues that the trial court erred in requiring Village to establish by substantial evidence that the reasonableness and necessity of the annexation was fairly debatable. Village's second point argues that the trial court erroneously concluded that the reasonableness and necessity of the annexation was not fairly debatable because the trial court refused to consider Village's desire to regulate the Annexed Territory to prevent a noxious use.

The Sawyer Act provides for the involuntary annexation of adjacent unincorporated land by constitutionally chartered cities, towns, or villages. Section 71.015.1; *City of Peculiar v. Effertz Bros Inc.*, 254 S.W.3d 51, 56 (Mo. App. W.D. 2008). To successfully annex land pursuant to the Sawyer Act, a municipality must duly authorize the annexation; conduct a public hearing to present a plan of intent for the annexation; conduct an election where a majority of the electors of the municipality and proposed annexed area approve the annexation; and secure a declaratory judgment authorizing the annexation.[5] Section 71.015. We are concerned in this case with the last requirement.

To secure a declaratory judgment authorizing annexation of the Annexed Territory, Village was required to demonstrate that: (1) the Annexed Territory is contiguous to Village and shares a common boundary that is at least 15% of the length of the perimeter of the Annexed Territory; (2) the annexation is reasonable and necessary to the development of Village; and (3) Village is able to provide municipal services to the

---

[5]The effort to secure a declaratory judgment authorizing a section 71.015 annexation may occur before or after the election approving the annexation. Section 71.015.1(5)

Annexed Territory within a reasonable time.  Section 71.015.1(5); *see City of Peculiar v. Martin Marietta Materials, Inc.*, 259 S.W.3d 597, 600 (Mo. App. W.D. 2008).  A court must find that each of these factors "is at least 'fairly debatable.'"  *Martin Marietta Materials, Inc.*, 259 S.W.3d at 600 (quoting *Effertz Bros. Inc.*, 254 S.W.3d at 56-57).  The Judgment found that Village failed to establish the second statutory factor.[6]

To analyze whether the reasonableness and necessity of an involuntary annexation is fairly debatable, "each case must be decided on its own unique circumstances."  *Id.* (citing *City of St. Peters v. Ronald A. Winterhoff Living Trust*, 117 S.W.3d 698, 700 (Mo. App. E.D. 2003)).  Nonetheless, Missouri recognizes a non-exclusive list of criteria that may be weighed and considered in determining reasonableness and necessity.

> A variety of factors are considered in determining whether the annexation decision was reasonable, which include: (1) a need for residential or industrial sites . . .; (2) the city's inability to meet its needs without expansion; (3) consideration only of needs which are reasonably foreseeable and not visionary; (4) past growth relied on to show future necessity; (5) . . . the extent to which past growth has caused the city to spill over into the proposed area; (6) the beneficial effect of uniform application and enforcement of municipal zoning ordinances in the city and in the annexed area; (7) the need for or the beneficial effect of uniform application and enforcement of municipal building, plumbing and electrical codes; (8) the need for or the beneficial effect of extending police protection to the annexed area; (9) the need for or beneficial effect of uniform application and enforcement of municipal ordinances or regulations pertaining to health; (10) the need for and the ability of the city to extend essential municipal services into the annexed area; (11) enhancement in value by reason of adaptability of the land proposed to be annexed for prospective city uses; and (12) regularity of boundaries.

---

[6]The Judgment did not expressly address the third statutory factor, although there are unchallenged findings in the Judgment that could be fairly read to require the conclusion that Village could not, and did not intend to, provide municipal services to the Annexed Territory within a reasonable period of time.  Because we affirm the Judgment's conclusion with respect to the second statutory factor, we need not address whether the Judgment could be alternatively affirmed based on unchallenged findings implicating the third statutory factor.

5

*City of Centralia*, 879 S.W.2d at 727.

Village first complains that the trial court erred in requiring it to prove that the proposed annexation was fairly debatable with substantial evidence. Village argues that in doing so, the trial court erroneously imposed a burden of persuasion, and in the process, substituted its judgment as to the advisability or wisdom of the annexation. We disagree.

"There is not in [Sawyer Act] cases a burden of persuasion by a preponderance of the evidence." *Binger v. City of Independenc*e, 588 S.W.2d 481, 485 (Mo. banc 1979). "Instead, the test is whether the evidence shows that the question of reasonableness and necessity of the annexation was fairly debatable." *Id*. "If it does, the legislative decision must stand." *Id*. Thus, the "burden of proof" applicable to the Sawyer Act "necessarily refer[s] to a burden of proceeding with the evidence." *Id*. If a municipality proceeds with evidence which supports a finding that the reasonableness and necessity of annexation is fairly debatable, then the legislative determination to this effect must stand. *Id*. at 486. The Judgment correctly referenced an understanding of this legal principle, as it found that "[n]either party has a burden of proof by a preponderance of the evidence[,] [and Village] simply has the burden of proceeding with the evidence." [Judgment, p. 2] The trial court did not erroneously impose a burden of persuasion on Village.

The Judgment did find that Village failed to produce "substantial evidence" that the reasonableness and necessity of the proposed annexation was fairly debatable. This finding did not impose a burden of persuasion on Village. The finding reflects only the trial court's determination that Village failed to sustain its burden to proceed with evidence that could support a finding that the reasonableness and necessity of annexation was fairly debatable.

6

*See Binger*, 588 S.W.2d at 486 (holding that if "there is no substantial evidence to show that the annexation was reasonable and necessary, . . . then the annexation must be set aside"). Village's first point on appeal is denied.[7]

Village next complains that it was error for the trial court to conclude that Village failed to put forth substantial evidence that the reasonableness and necessity of the proposed annexation was fairly debatable because the trial court erroneously disregarded evidence that Village desired to regulate the Annexed Territory to protect Village from a noxious use.

The Judgment addressed the *Centralia* factors long recognized as relevant to determining whether the reasonableness and necessity of a proposed annexation is fairly debatable. The Judgment found that **no** evidence was presented by Village to support any of the factors. Instead, the trial court found that "the primary and sole reason . . . Village [is] seeking to annex the [Annexed Territory] is defensive, to control the zoning, and maintain what it refers to as a 'natural buffer' between the Village and the City's landfill." [Judgment, p. 10] Village does not challenge any of the trial court's findings in this regard.

In fact, Village concedes that "[t]he decision was made to annex the [Annexed Territory] to control how the [Annexed Territory] would be developed in order to maintain the character of [Village] and the quality of life enjoyed by Village residents." [Appellant's Brief, p. 15] Consistent with this concession, Village's evidence at trial established that

---

[7]Village's first point on appeal would also have been susceptible to dismissal because it violates Rule 84.04, as the argument portion of the Brief does not develop the point, but instead sets forth a stream of abstract legal principles that are not connected to the error alleged in the point. *See Sherman v. Sherman*, 160 S.W.3d 381, 389 (Mo. App. W.D. 2004); *see also Snyder v. Snyder*, 142 S.W.3d 780, 783 (Mo. App. S.D. 2004) ("An argument should show how the principles of law and the facts of the case interact.").

the decision to annex the Annexed Territory was based exclusively on concerns about, and a desire to prevent, City's efforts to expand the landfill.

Village acknowledges that the *Centralia* factors do not include defensive annexation to control and regulate nearby land in order to prevent a noxious use. Village argues, however, that since the *Centralia* factors are non-exclusive, the trial court erred in refusing to consider Village's evidence that the proposed annexation was intended to protect its residents from the threatened noxious use of the Annexed Territory.

Village's argument ignores that "Missouri law is clear that a desire to control the zoning of the area sought to be annexed does not in and of itself provide a sufficient basis to approve annexation." *City of Lake Winnebago v. Gosewisch*, 932 S.W.2d 840, 848 (Mo. App. W.D. 1996). This same conclusion has been reached in multiple Missouri cases over the last several decades. *See City of Parkville v. N. Farms*, 950 S.W.2d 882, 890 (Mo. App. W.D. 1997) (stating that "orderly planning and development of adjacent boundaries is a salutary factor for consideration," but "does not in and of itself justify annexation"); *City of Flat River v. Counts*, 596 S.W.2d 446, 450 (Mo. App. E.D. 1979) (stating that "orderly planning and development of adjacent boundaries is a salutary factor for consideration, but it cannot by itself justify annexation"); *City of Odessa v. Carroll*, 512 S.W.2d 862, 868 (Mo. App. K.C. Dist. 1974) (stating that "the objective of an orderly development of land contiguous to a municipal boundary . . . alone does not justify annexation"); *City of Butler v. Bock*, 492 S.W.2d 160, 163-64 (Mo. App. K.C. Dist. 1973) (reversing a trial court judgment finding annexation to be reasonable and necessary because "[t]he only thing that

8

is present in the evidence here is the City's desire to control by zoning whatever might be or possibly be the development into other uses of this largely agricultural area").

In disregarding this precedent, Village relies heavily on *Effertz Bros Inc*. where we held that "[t]he City [of Peculiar] had several other legitimate reasons for annexation, including the regulation of nearby land so that it would not become noxious to the City and the control over the City's ordinary and reasonable development." 254 S.W.3d at 65. Village argues this holding confirms our recognition that a desire to control the use of annexed land is an appropriate factor to be considered in assessing whether the reasonableness and necessity of a proposed annexation is fairly debatable. *Effertz Bros Inc*. does not stand for this proposition.

After observing that the trial court had relied, in part, on a municipality's desire to control the use of annexed land to find an annexation reasonable and necessary, *Effertz Bros Inc*. expressly held that the "reliance on the 'protection of the boundaries' benefit of annexation [was] inappropriate." *Id*. "The Sawyer's Act [sic] does not recognize competition among cities for unincorporated land as a permissible reason for annexation." *Id*. "The defensive benefit of annexation . . . makes an annexation no more reasonable and necessary than it would be without." *Id*. That is because

> [i]n Missouri, municipalities function "to serve the general interests of [their] residents, not to engage in competition for the right to collect revenues, provide services and the like. The legislature has provided the residents with the means to assert their preferences for such entities. Parties involved in annexation cases should note that the legislature's actions affirm the responsibility of government for the needs of those whom it serves, and not the needs of government in a continuing quest to serve itself."

9

*Id*. (quoting *City of Town & Country v. St. Louis Cty.*, 657 S.W.2d 598, 606 (Mo. banc 1983)). Thus, "rapidly expanding to claim land in a defensive maneuver cannot function to make annexation more reasonable and necessary under the Sawyer's Act [sic]." *Id*.

*Effertz Bros Inc*. thus held, consistent with longstanding precedent, that annexing land in order to defensively control its use is not an appropriate factor in assessing whether the reasonableness and necessity of the annexation is fairly debatable. Village's out of context reliance on the last sentence in *Effertz Bros Inc*. is disingenuous. The passage Village cites, read in context, states only that a judgment declaring an annexation reasonable and necessary can nonetheless be affirmed, even if a trial court relies on evidence of the defensive benefit of annexation, where the trial court also relies on evidence of other, appropriate factors. *Id*. In other words, though "[c]ontrol of zoning of neighboring land is not a sufficient rationale for justifying an annexation[,] . . . it is not an impermissible motive altogether." *Id*. at 65 n.11 (citation omitted). An annexing authority can be motivated by a desire to protect against a particular use of adjacent property. But evidence of that motivation will not sustain the annexing authority's burden to proceed with evidence that the reasonableness and necessity of a proposed annexation is fairly debatable.

There is a logical underpinning for the settled principle that a municipality's defensive motivation to control, or to prevent uses on, annexed property is insufficient in itself to support finding a proposed annexation to be reasonable and necessary. "[B]oth parties, the city and the area proposed, are entitled to the benefit of the test of reasonableness. In other words, the annexation must be reasonable as to those living in the outside area, as well as to those living in the city." *Id*. at 62 (quoting *City of Bourbon v.*

10

*Miller*, 420 S.W.2d 296, 300 (Mo. banc 1967) (internal citation omitted)). In fact, the Sawyer Act was enacted in response to concerns that municipalities were expanding municipal limits with near unfettered discretion, based solely on whether annexation benefitted the municipality. *Annexation by Municipality of Adjacent Area in Missouri: Judicial Attitude Toward the Sawyer Act*, 1961 WASH. U. L. Q. 159, 159-162 (1961) (discussing pre-Sawyer Act annexations, and observing that "pre-Sawyer Act cases reflect the courts' preoccupation with municipal need, and virtual disregard of whether annexation was desirable from the standpoint of the annexed area"). After enactment of the Sawyer Act, our Supreme Court made it "quite clear that a determination of reasonableness requires an examination of the needs of both the annexing city and annexed area." *Id*. at 165 (discussing holding in *City of Olivette v. Graeler*, 338 S.W.2d 827, 837 (Mo. 1960) ("Both parties are entitled to the test of reasonableness.")). When the sole evidence justifying a proposed annexation is the annexing authority's defensive desire to prevent uses on annexed land, it is axiomatic that no benefit to the annexed land is demonstrated, negating any ability to find the annexation reasonable and necessary to both the annexing authority and the annexed area. Were we to hold otherwise, evidence of a desire to prevent a use of adjacent property would sustain an annexing authority's burden to proceed with evidence that the reasonableness and necessity of a proposed annexation is fairly debatable as a matter of law, returning us to the state of the law before the Sawyer Act was enacted.

Village's concern about City's possible expansion of the landfill may well be legitimate. However, Village and its residents have other recourse to prevent that expansion or to seek relief if expansion in fact causes compensable damage. Village's

11

concerns do not afford a persuasive basis for revisiting what has been a settled principle in Missouri for decades. *See Connoley v. Beyer Crushed Rock Co.*, 197 S.W.2d 653, 655 (Mo. banc 1946) ("[E]stablished precedents should not be ignored without good reason."). Village's second point on appeal is denied.

## Conclusion

The trial court did not err in finding that the reasonableness and necessity of the proposed annexation was not fairly debatable. The Judgment is affirmed.


_____
Cynthia L. Martin, Judge


All concur

12